**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| STACY PRITCHETT,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MICHAEL J. ASTRUE,  )<br>**Commissioner of Social Security**  )<br>  )<br>    Defendant.  )<br>_____) | CIVIL NO. 08CV217 |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Stacy Pritchett, by counsel, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability Insurance Benefits ("DIB").  The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (docket entry no. 8) be DENIED; that Defendant's Motion for Summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

Judgment (docket entry no. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB on May 6, 2004, alleging disability beginning January 2, 2004. (R. at 82.) The claim was denied initially and upon reconsideration. (R. at 60-64, 68-70.) Plaintiff filed a request for hearing on April 20, 2005, and a hearing was held on January 12, 2006 before ALJ Alan Bergstrom. (R. at 22-57.) Plaintiff was represented by counsel. (R. at 24.) On January 23, 2006, ALJ Bergstrom issued a decision that denied Plaintiff's claim for DIB, finding Plaintiff could perform her past relevant work and, accordingly, was not disabled under the Act. (R. at 15-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 5-8.) Plaintiff then filed a complaint with this Court. On November 7, 2006, this Court reversed and remanded the case to the Commissioner on consent of the parties for a de novo review by an ALJ of Plaintiff's application for benefits. (R. at 322-23.) The Appeals Council accordingly vacated and remanded the case back to an ALJ for further administrative proceedings. (R. at 319-21.)

A new hearing was conducted by ALJ Drew Swank on August 17, 2006. (R. at 370-429.) Plaintiff was again represented by counsel at that hearing. (R. at 372.) The ALJ denied Plaintiff's claim for DIB in a decision issued on September 12, 2007. (R. at 305-314.) The ALJ found that there were jobs existing in significant number in the national economy that Plaintiff could perform, and therefore Plaintiff was not disabled under the Act. (R. at 313.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 292-95.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d

514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the evaluation is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[2] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

---

[2] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve (12) months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[3] based on an assessment of the claimant's residual functional capacity ("RFC")[4] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy

---

[3] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[4] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in SGA at any time relevant to the decision. (R. at 307.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of multiple sclerosis and depression, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 309.) In so finding, the ALJ determined that Plaintiff had the RFC to "lift/carry at least 10 pounds, walk and stand for a total of two hours of an eight-hour workday, and sit for six hours of an eight-hour workday." (R. at 312.) At step four, the ALJ concluded Plaintiff was unable to perform her past relevant work. (R. at 313.) Finally, at step five, the ALJ inquired of the VE whether there were jobs existing in significant numbers in the national economy that a hypothetical individual of Plaintiff's age, education, work experience, and RFC could perform. (R. at 313.) The VE identified the jobs of charge account clerk, production inspector/grader, and information clerk. (R. at 313-14.) Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined in the Act, at any time from January 2, 2004 through the date of the decision. (R. at 314.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for further administrative proceedings. (Pl.'s Mot. for

Summ. J. at 1.) In support of her argument, Plaintiff contends that the ALJ erred because he did not afford her treating physicians' opinions enough weight, a decision which Plaintiff claims was unsupported by substantial evidence. (Pl.'s Br. in Support of Mot. for Summ. J. ("Pl.'s Br.") at 10.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL

1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

An ALJ must articulate the reasons for the weight given to a treating source's medical opinion and specific supporting evidence must be cited so that a reviewing court can discern the basis for the decision. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ assigned little weight to the opinions of Plaintiff's treating physicians, Drs. McGee and Katchinoff. (R. at 312.) His reasoning for making this determination was articulated as required under 20 C.F.R. § 404.1527(d)(2) as follows:

> "[T]hey have not provided probative information concerning the nature and severity of the claimant's specific condition and impairment. The undersigned does not doubt that the claimant has multiple sclerosis and fatigue resulting from multiple sclerosis. However, neither physician has given an opinion regarding what this particular claimant can do or cannot do. Dr. McGee opined (by checking the 'yes' box) that the claimant has a medically determinable condition (multiple sclerosis) that can be reasonably expected to result in the claimant's alleged limitations. Stated another way, neither physician stated what the claimant can or cannot do; rather they opined whether it is reasonable that individuals who have multiple sclerosis have certain limitations or impairments. There is a clear and necessary distinction between opining as to the abilities of this particular claimant and stating whether some people with multiple sclerosis have certain problems. Multiple sclerosis comes in all levels of severity; what is not provided is an opinion regarding the severity of this claimant's specific multiple sclerosis and symptoms. Considering the overall medical evidence and the claimant's daily activities, the undersigned does not accept the claimant's alleged subjective limitations listed by the claimant's attorney in the multiple sclerosis questionnaire."

(R. at 312.) Plaintiff argues that the ALJ's determination to give her treating physicians opinions little weight was against the substantial weight of the evidence. (Pl.'s Br. at 16-20.) Plaintiff takes issue with two points the ALJ considered in deciding to give her treating physicians' opinions little weight. (Pl.'s Br. at 16-20.) Specifically, Plaintiff asserts that the ALJ mischaracterized the overall medical evidence, as well as Plaintiff's description of her daily activities in reaching his opinion.

As to the initial assertion, the ALJ relied on "the overall medical evidence", including the

opinion of Dr. Basavaraj, the consultive examiner. The ALJ discussed "the overall medical evidence" throughout his opinion. (R. at 307-13.) For example, as regarded Dr. McGee, one of Plaintiff's treating physicians, the ALJ noted that the doctor recorded no evidence of peripheral neuropathy; reported that her gait and strength in all extremities were normal; and concluded that an MRI of her brain showed significant interval improvement. (R. at 308.) In fact, the ALJ further noted that on a March 12, 2004 visit with Dr. McGee, Plaintiff noted that she was feeling much better, with less fatigue and less pain. (R. at 308.) The ALJ also noted that Dr. McGee conducted an MRI that showed no substantial changes in 2005. (R. at 308.) Moreover, Dr. Katchinoff conducted an exam that showed Plaintiff to have no clinical exacerbation of her multiple sclerosis since 2002, which was two years before the date Plaintiff claims her disability began. (R. at 361.)

In addition, the ALJ relied upon Plaintiff's own description of her daily activities in determining that there was substantial evidence to challenge the opinions of Plaintiff's treating physicians. (R. at 312.) Most notably, Plaintiff has two young children that she supervises full time. (R. at 381-82.) Plaintiff has no real support network to assist her with the child care, and her husband is typically unavailable to assist. (R. at 211, 215.) Plaintiff argues that the ALJ failed to consider all of the evidence in the record when reaching his conclusion, as the ALJ did not address Plaintiff's statements that her fatigue affects her ability to tend to her children. (Pl.'s Br. at 18-19.) In fact, the ALJ considered all of the facts on record when reaching his decision, including Plaintiff's protestation that "there are times when fatigue affects her ability to watch her children." (R. at 310.) In addition, the ALJ noted that Plaintiff confirmed that she grocery shops, cooks, cleans, attends doctor's appointments, attends church and is able to drive and attend to her personal care. (R. at 398.) The ALJ also noted that Plaintiff was able to work for

her husband's business in 2004 and 2005. (R. at 311.)

Plaintiff argues that the ALJ erred when he relied on such work effort, as he had already determined it did not qualify as SGA. (Pl.'s Br. at 19.) The ALJ must consider the substantial evidence in the record when determining what weight to give a treating physician's opinion. The ALJ considered all of the evidence on record when reaching his determination, and the fact that Plaintiff worked for a period for husband's business was but one of the numerous facets of Plaintiff's life he considered. Although the work for her husband was not deemed SGA, it is still evidence that can either augment or detract from the credibility of the treating physician's opinion. In a similar vein, the Plaintiff contends that the ALJ improperly relied on a treatment note, in stating that the note "suggested that [Plaintiff] was able to work until August 2005."(R. at 311.) Again, the ALJ must consider all of the evidence on record to determine what weight to give a treating physician's opinion, and a single treatment note that suggested Plaintiff was capable of working in her husband's business was just one piece of evidence he could and did consider.

Plaintiff finally argues that the ALJ's reasoning that Plaintiff's treating physicians' opinions were not particularized regarding what the Plaintiff herself could or could not do was "a distinction without any meaningful difference." (Pl.'s Br. at 13.) Dr. McGee only completed a form, and provided no details or specifics as to Plaintiff's particular symptoms and capabilities. (R. at 273.) In similar fashion, Dr. Katchinoff noted in one letter that Plaintiff's "current limitations concern fatigue. This is a common complaint in patient[s] with multiple sclerosis. This certainly would impact her ability to function normally in a full time position." (R. at 369.) In contrast, Dr. Basavaraj's opinion gave detailed explanations of Plaintiff's capabilities, as well as noting that Plaintiff's "multiple sclerosis is considered as mild and early and should not be a

major concern to affect her memory as well as fatigue." (R. at 249.) Dr. Basavaraj also opined that Plaintiff would be able to work an eight hour day. (R. at 249.) The ALJ considered all of the factors, in addition to Plaintiff's description of her daily activities, when evaluating the evidence to determine what weight to give Plaintiff's treating physicians' opinions. Not only did the ALJ thoroughly delineate which factors he considered when giving Plaintiff's physicians' opinions little weight, but the opinion is otherwise supported by substantial evidence of record. Accordingly, Plaintiff's argument that the ALJ did not properly afford her treating physicians' opinions proper weight is without merit.

## V.  CONCLUSION

Based on the foregoing analysis, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (docket entry no. 8) be DENIED; that Defendant's Motion for Summary Judgment (docket entry no. 10) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: October 16, 2008
Richmond, Virginia